Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| LUNA RESIDENTIAL II, LLC<br><br>Apelado<br><br>v.<br><br>JORGE EFRAÍN<br>RODRÍGUEZ WILSON<br><br>Apelante | KLAN202400705 | *Apelación*<br>Procedente del<br>Tribunal de<br>Primera Instancia,<br>Sala Superior de<br>San Juan<br><br>Sobre: Cobro de<br>Dinero y<br>Ejecución de<br>hipoteca por la vía<br>ordinaria<br><br>Caso Núm.:<br>K CD2013-1102 |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez.

Rodríguez Casillas, juez ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 12 noviembre de 2024.

Comparece ante nos el Sr. Jorge Efraín Rodríguez Wilson (señor Rodríguez Wilson o Apelante), para que revoquemos la *Sentencia Sumaria* emitida el **6 de junio de 2024**, por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI). Allí, se declaró *Con Lugar* la *Demanda Enmendada*.[1]

Oportunamente, el señor Rodríguez Wilson solicitó la reconsideración de la determinación, no obstante, la misma fue declarada *No Ha Lugar* el 24 de junio de 2024.[2]

Perfeccionado el recurso de apelación, procedemos a **confirmar** la *Sentencia* apelada. Veamos.

**-I-**

Surge de las alegaciones de las partes que el **9 de mayo de 2013**, Banco Santander de Puerto Rico (Santander) presentó

---

[1] Apéndice de la *Apelación*, págs. 23-33.
[2] Notificada el 26 de junio de 2024.

*Demanda* en cobro de dinero y ejecución de hipoteca por la vía ordinaria contra el señor Rodríguez Wilson. Este fue emplazado personalmente el **7 de junio de 2013** y presentó *Contestación a la Demanda* el **8 de julio de 2013**.

Así las cosas, el **29 de agosto de 2013** las partes informaron al TPI que se encontraban en unas conversaciones extrajudiciales para intentar llegar a un acuerdo y que una de las alternativas que las partes estaban considerando era la modificación de la hipoteca. Por tanto, el señor Rodríguez Wilson solicitó un término de sesenta (60) días para informar al TPI. Santander no tuvo reparos.

Posteriormente, el **25 de noviembre de 2013** Santander presentó *Moción Informativa sobre Proceso de Mediación de Hipoteca* en el que informó al TPI que la modificación de hipoteca no fue posible porque uno de los acreedores del señor Rodríguez Wilson no aceptó subordinar su acreencia en segundo rango, por lo que solicitó la continuación de los procedimientos.

Ese mismo día, Santander presentó una *Moción de Sentencia Sumaria*. En respuesta, el **23 de diciembre de 2013** el señor Rodríguez Wilson presentó su oposición.

El **28 de enero de 2014** el TPI emitió una *Orden* en la que indicó que no podía disponer sumariamente del caso en ese momento.[3] Luego, el señor Rodríguez Wilson presentó en dos ocasiones una petición de quiebra ante el Tribunal Federal para el Distrito de Puerto Rico. Por consiguiente, el TPI decretó el archivo administrativo del caso mientras se dilucidaban los procedimientos ante el Tribunal de Quiebras.

El **18 de marzo de 2016**, Santander presentó *Moción en Solicitud de Reapertura del Caso y Solicitud de Autorización para Enmendar la Demanda*. Adujo que el Tribunal de Quiebras había

---

[3] Notificada el 6 de febrero de 2014.

autorizado una modificación a la paralización automática ("automatic stay") para que Santander pudiera ejecutar su garantía hipotecaria y, en consecuencia, solicitó autorización para enmendar la demanda y llevar una causa de acción *in rem*.

Razón por la cual, el **6 de junio de** 2016 el señor Rodríguez Wilson presentó la *Contestación a Demanda Enmendada*.

Así, el **11 de octubre de 2016** Santander presentó *Moción de Sentencia Sumaria*. A su vez, el **7 de noviembre de 2016** el señor Rodríguez Wilson se opuso. En consecuencia, el TPI señaló una vista argumentativa para el **29 de noviembre de 2016**. Allí, el señor Rodríguez Wilson, representado por su abogado, renunció a la celebración de la vista de mediación compulsoria, según establecido en la Ley Núm. 184 de 17 de agosto de 2012, "Ley para Mediación Compulsoria y Preservación de tu Hogar en los Procesos de Ejecuciones de Hipoteca de una Vivienda Principal" (Ley Núm. 184-2012) y se allanó a la solicitud de sentencia sumaria presentada por Santander.

El **29 de noviembre de 2016**, el TPI dictó una *Sentencia Sumaria* contra el señor Rodríguez Wilson y declaró *Con Lugar* la demanda presentada por Santander.[4]

Tras varios trámites post sentencia, el **4 de abril de 2017** se llevó a cabo el acto de subasta y se adjudicó la buena pro de la propiedad a Santander. El TPI dictó *Orden y Mandamiento de Lanzamiento* el **29 de mayo de 2018**.

El **4 de junio de 2018**, el señor Rodríguez Wilson presentó *Moción Urgente para que se Deje sin Efecto Orden y Mandamiento de Desalojo*. En respuesta, el **12 de junio de 2018** Santander presentó su oposición. Allí, argumentó que el Apelante no había puesto en

---

[4] Notificada el 30 de noviembre de 2016.

posición al TPI para determinar la paralización de los procedimientos.

Ante la negativa del TPI, el señor Rodríguez Wilson acudió ante el Tribunal de Apelaciones mediante una petición de *certiorari* en el caso número KLCE201800905. Un Panel hermano emitió *Sentencia* el **22 de febrero de 2019** y dejó sin efecto la sentencia emitida por el TPI.[5] Además, ordenó que el caso fuera referido al proceso de mediación compulsoria al amparo de la Ley Núm. 184-2012.

Conforme a lo anterior, el **8 de julio de 2019** las partes fueron referidas al Proceso de Mediación Compulsoria, con el propósito de auscultar alternativas para lograr un acuerdo satisfactorio para ambas.

Trabada ahí la controversia, el **12 de noviembre de 2019** el Sr. Francisco Almeida León presentó una *Solicitud de Intervención.* En apretada síntesis, alegó que tenía una acreencia en contra del Apelante que estaba garantizada con una hipoteca de **segundo rango** sobre el mismo inmueble, en el cual, Santander ostentaba una garantía hipotecaria **en primer rango**.[6] Dicha solicitud de intervención fue denegada por el TPI.

El **31 de diciembre de** 2019, Santander Financial Services, Inc., adquirió de Banco Santander Puerto Rico el préstamo objeto del presente pleito. El pagaré se encontraba en proceso de ser restituido según la *Orden de Restitución de Pagaré* dictada el **19 de octubre de 2020**. En consecuencia, el **14 de abril de 2021** el TPI dictó una *Orden de Sustitución* de parte.

Posteriormente, **Luna Residential II, LLC** (Luna o Apelado) adquirió de buena fe el préstamo por el valor recibido en el curso ordinario de los negocios, conforme a lo informado el **11 de abril de**

---

[5] Notificada el 27 de febrero de 2019. Apéndice de la *Apelación*, págs. 1-18.
[6] *Íd.*, págs. 19-20.

**2022** en la *Solicitud Conjunta de Sustitución de parte Demandante.* El TPI dictó otra *Orden de Sustitución* el **2 de mayo de 2022**.[7]

El **25 de agosto de 2022** Luna presentó una *Solicitud de Sentencia Sumaria.* En respuesta, el **27 de septiembre de 2022** el señor Rodríguez Wilson presentó una *Oposición a Solicitud de Sentencia Sumaria.*

Debido al cambio de acreedor, el **24 de agosto de 2023** el TPI emitió una *Orden* con un otro referido al proceso de mediación compulsoria.[8] El **21 de marzo de 2024**, las partes llegaron a un acuerdo consistente en un saldo a descuento y suscribieron una *Aceptación de Acuerdos por Videoconferencia.*[9]

Ante el incumplimiento del señor Rodríguez Wilson, el **15 de junio de 2024** Luna presentó una *Moción en Cumplimiento de Orden, Solicitud de Continuación de los Procedimientos y de Adjudicación de Sentencia Sumaria*. En resumen, alegó que: **(1)** el **25 de marzo de 2024** el Centro de Mediación de Conflictos presentó *Moción Informativa sobre Resultado del Proceso de Mediación por Videoconferencia* mediante la cual informó que las partes suscribieron una alternativa de mitigación de pérdidas en la cual se le aprobó al Apelante un saldo total al descuento de la deuda; y, **(2)** el 2 de abril de 2024 el TPI se dio por enterado y le ordenó Luna a informar el 13 de mayo de 2024 si el Apelante cumplió con el pago. Debido al incumplimiento del señor Rodríguez Wilson, Luna solicitó la continuación de los procedimientos.

El **6 de junio de 2024** el TPI emitió una *Sentencia Sumaria* a favor de Luna e hizo las siguientes **determinaciones de hechos que no estaban en controversia**:

1. *El bien inmueble sobre el cual surge el derecho o interés objeto de esta acción ubica en el Municipio de San Juan.*
2. *La parte demandada no es menor de edad ni incapaz y*

---

[7] Notificada el 6 de mayo de 2022.
[8] Notificada el 28 de agosto de 2023.
[9] Apéndice de la *Apelación,* págs. 21-22.

*conforme a Certificación del Departamento de la Defensa sometida por la parte demandante, no sirve actualmente en las Fuerzas Armadas de los Estados Unidos.*

3. *Las direcciones conocidas de la parte demandada son las siguientes: FÍSICA: 1797 Calle Camelia, Santa María, San Juan, PR 00917, y POSTAL: PMB 91, PO Box 70344, San Juan, PR 00936-8344.*

4. *Para garantizar un préstamo con garantía hipotecaria, la parte demandada de epígrafe suscribió los siguientes documentos:*

    a) *Pagaré Hipotecario por la suma principal de $1,491,000.00, con intereses al 7 3/8% anual y demás créditos accesorios, suscrito el 28 de abril de 2006 y reconocido mediante affidávit número 38,096 ante el Notario Público Orlin P. Goble.*

    b) *En aseguramiento del Pagaré Hipotecario antes mencionado por la suma principal de $1,491,000.00 más intereses y la cantidad líquida y estipulada de $149,100.00 para costas, gastos y honorarios de abogado en caso de reclamación judicial, el 28 de abril de 2006 se otorgó la Escritura Número 25, ante el Notario Público Orlin P. Goble.*

5. *La hipoteca descrita en el apartado anterior consta debidamente inscrita en el Registro de la Propiedad de Puerto Rico, Tercera (III) Sección de San Juan, finca número 3,061 de Monacillos, inscripción 19na.*[10]

6. *El gravamen hipotecario al que se refiere en el párrafo anterior grava el siguiente inmueble:*

    *---URBANA: URBANIZACIÓN REPARTO SANTA MARÍA de Monacillos. Solar: 83. Cabida: cuatro mil ciento veinte punto ochenta y ocho (4,120.88) metros cuadrados., Linderos: NORTE, su fondo es una distancia de cuarenta y cinco metros (45.00) con el solar número noventa (90) de Raúl Torres, en una distancia de treinta y cinco metros (35.00) con el solar número ochenta y nueva (89) propiedad de Luis J. Cintrón, en una distancia de quince metros noventa y cinco centímetros (15.95) con el solar número ochenta y ocho (88) propiedad de Gustavo Arrillaga, en una distancia de quince metros cincuenta y cinco (15.55) centímetros con el solar número ochenta y siente (87) propiedad de Juan Arrillaga y en una distancia de cuarenta y dos metros veintiocho centímetros (42.28) con el solar número ochenta y seis (86) propiedad de Enrique Fernández. SUR, su frente en una distancia de treinta y tres metros cincuenta y un centímetros (33.50), con circulo que forma el final de la Calle B y en una distancia de noventa metros cincuenta y dos centímetros (90.52) con solar número ochenta y dos (82) propiedad [de] Luis Torres Bonet, separado por una servidumbre de paso para tubería de desagüe; ESTE, su derecho entrando en una distancia de treinta y dos metros cincuenta y seis (32.56)*

---

[10] *Íd.*, págs. 24-26.

*centímetros con terrenos de Miguel Ángel García Méndez. OESTE, su izquierda entrando el en una distancia de [cincuenta] metros ochenta y nueve centímetros (50.89) con el solar número ochenta y cuatro (84) propiedad de Amadeo Viera de Collins. Se ha construido sobre este solar una [casa] que se describe así: Casa residencial de dos niveles, que contiene sala, comedor, cocina, salón familiar, salón de juego, cuatro dormitorios, cinco baños, dos marquesinas, terraza con barra y piscina, según inscripción 7ma.--------------------------------------------*

*---Consta inscrita al Folio Ciento Cuarenta y Cinco (145) del Tomo Ochenta y Cinco de Monacillos, Registro de la Propiedad de Puerto Rico, Sección Tercera (III) de San Juan, Finca Número Tres Mil Sesenta y Uno (3,061).------------*

7. *La parte demandante, **Luna Residential II, LLC** es la tenedora de buena fe del referido Pagaré Hipotecario, habiéndolo adquirido por valor recibido mediante endoso en el curso ordinario de sus negocios.*

8. *Según Orden dictada el 29 de diciembre de 2015 por la Corte Federal de Quiebras en el Caso Núm. 15-02794 (Cap. 11), se modificó la paralización automática, a modo que la parte demandante pueda proceder con la ejecución de su garantía hipotecaria de forma In Rem, de forma que, en su día, se autorice la venta de la propiedad hipotecada en pública subasta y que con el producto de la misma se proceda al recobro de las cuantías acumuladas y garantizadas mediante la hipoteca antes relacionada.*

9. *Conforme la Sentencia dictada por el Tribunal de Apelaciones en el caso KLCE201800905, las partes fueron referidas al Proceso de Mediación Compulsoria al amparo de la Ley Núm. 184 de 17 de agosto de 2012, "Ley para mediación Compulsoria y Preservación de tu Hogar en los Procesos de Ejecuciones de Hipoteca de una Vivienda Principal" mediante Orden del 8 de julio de 2019. Celebradas las reuniones entre las partes y evaluada la solicitud completada de la parte demandada, mediante "Carta de Denegación" del 25 de noviembre de 2019, la parte demandante informó que la parte demandada no demostró tener la capacidad económica necesaria para cualificar para las alternativas de mitigación disponibles.*

10. *A esos efectos, el 31 de diciembre de 2019, el Centro de Mediación de Conflictos presentó "Moción Informativa en Casos de Ejecución de Hipoteca" y "Notificación al Tribunal en Casos de Ejecución de Hipoteca", mediante las cuales informó acerca de la participación de las partes en el proceso cumpliendo con los requisitos jurisdiccionales establecidos en la Ley 184-2012 y devolvió el caso a la consideración de este Tribunal por no haberse alcanzado un acuerdo entre las partes.*

11. *Por otra parte, surge del expediente de la parte demandante, que la parte demandada no ha completado una solicitud formal en mitigación de pérdidas ("Loss Mitigation") según establecido en el Consumer Financial Protection Bureau ("CFBP") así como el Reglamento X de la "Real Estate Settlement Procedures Act" ("RESPA"), y la*

*Ley Núm. 169-2019, conocida como "Ley de Ayuda al Deudor Hipotecario" (en adelante la "Ley 169").*

12. *Conforme a Declaración Jurada suscrita por el Oficial Autorizado de la parte demandante, la obligación monetaria garantizada por la hipoteca que grava el inmueble propiedad de la parte demandada de epígrafe, al 13 de junio de 2022, asciende a las siguientes sumas: $1,175,904.99 por concepto de principal, más $841,173.89 de intereses acumulados desde el 1ro de noviembre de 2012, los cuales continuarán aumentando a razón del 7 3/8% anual, hasta el pago total de la deuda; más $55,0004.57 (sic)., por concepto de adelantos de la cuenta escrow", más $53,492.30 en concepto de cargos acumulados, más $125.00 de cargos por fondos insuficientes, más $124.80 de "recoverable balance", cantidades que continuarán acumulándose hasta el total y completo saldo de la deuda, más la suma de $149,100.00, equivalente al 10% del principal reconocido en el Pagaré Hipotecario, para cubrir costas, gastos y honorarios de abogado en caso de reclamación judicial y demás créditos accesorios, según pactados.*

El señor Rodríguez Wilson presentó una *Moción de Reconsideración a Sentencia Sumaria*,[11] la cual fue denegada el **24 de junio de 2024**.[12]

Inconforme, el **29 de julio de 2024** el señor Rodríguez Wilson acudió ante esta Curia e imputó la comisión del siguiente error:

*ERRÓ EL HONORABLE TRIBUNAL AL EMITIR UNA ORDEN Y SENTENCIA AL INCUMPLIR CON EL PROCESO DE MEDIACIÓN COMPULSORIA FALTANDO PARTE [INDISPENSABLE] CONFORME LA LEY 184 Y BAJO EL CONOCIMIENTO DE QUE SU SENTENCIA ES NULA CONFORME EL CASO DE BANCO SANTANDER VS CORREA, 2016 TSPR 201.*

Tras varios trámites procesales, el **18 de septiembre de 2024** Luna presentó un *Alegato en Oposición de la Parte Apelada*. Así, dimos por sometido el asunto.

**-II-**

**A.**

En nuestro ordenamiento, el mecanismo de sentencia sumaria procura, ante todo, aligerar la tramitación de aquellos casos en los cuales no existe una controversia de hechos real y

---

[11] *Íd.*, págs. 34-39.
[12] Notificada el 26 de agosto de 2024. *Íd.*, págs. 40-41.

sustancial que exija la celebración de un juicio en su fondo.[13] A tal efecto, la Regla 36 de las de Procedimiento Civil dispone el proceso mediante el cual cualquiera de las partes puede solicitar al tribunal que dicte sentencia sumaria a su favor.[14] De esta forma, cuando cualquier parte le solicite al tribunal que el pleito sea resuelto por la vía sumaria, deberá demostrar en su solicitud, *"la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación".*[15]

Los hechos esenciales y pertinentes a los que se refieren las Reglas de Procedimiento Civil son los que se conocen como *"hechos materiales".*[16] Al respecto, un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. Además, la controversia sobre el hecho material tiene que ser real. Esto es, que una controversia no es siempre real o sustancial o genuina. La controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario.[17]

Ahora bien, la Regla 36.3 de Procedimiento Civil, detalla el procedimiento que deben seguir las partes al momento de solicitar que se dicte una sentencia sumaria a su favor.[18] A esos efectos, la mencionada regla establece que una solicitud al amparo de ésta deberá incluir: **(1)** una exposición breve de las alegaciones de las partes; **(2)** los asuntos litigiosos o en controversia; **(3)** la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; **(4)** una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes

---

[13] *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018).
[14] Reglas de Procedimiento Civil 2009, 32 LPRA Ap. V., R. 36.
[15] 32 LPRA Ap. V., R. 36.1 y 36.2.
[16] *Íd.*
[17] 32 LPRA Ap. V., R. 36.1.; *Ramos Pérez v. Univisión*, 178 DPR 200, 213-214 (2010).
[18] 32 LPRA Ap. V, R. 36.3.

sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; **(5)** las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable; y **(6)** el remedio que debe ser concedido.[19]

Presentada una solicitud de sentencia sumaria, la parte que se opone a la concesión de la misma también deberá cumplir con ciertos requisitos preceptuados en la referida Regla y deberá argumentar el derecho aplicable a la controversia, ya sea para que el pleito no sea resuelto por la vía sumaria, o para que se dicte sentencia sumaria a su favor.

Es decir, el hecho de que una parte solicite sentencia sumaria no implica que la misma debe ser resuelta a su favor. Esto es así porque la sentencia sumaria puede dictarse a favor o en contra del promovente, según proceda en derecho.[20]

El criterio rector al momento de considerar la procedencia de un dictamen sumario es que no haya controversia sobre los hechos esenciales y pertinentes, según alegados por las partes en sus respectivas solicitudes y/o oposiciones, y que solo reste aplicar el Derecho.[21]

Es por ello que, una moción de sentencia sumaria adecuadamente presentada solo puede negarse si la parte que se opone a ella presenta hechos fundamentados que puedan mover a un juez a resolver a su favor.[22]  Si el juez se convence de que no existe una posibilidad razonable de escuchar lo que lee, no podrá conducirlo a una decisión a favor de esa parte, debe dictar sentencia

---

[19] *Íd.*; *Pérez Vargas v. Office Depot / Office Max, Inc.,* 203 DPR 687, 698 (2019).
[20] *Rodríguez García v. UCA, supra,* a la pág. 941.
[21] *Íd.*
[22] *Íd.*

sumaria.[23] Quiere decir que, en ausencia de una controversia de hechos materiales discernible, corresponderá a los tribunales aplicar el Derecho y resolver conforme al mismo.[24]

En cambio, el TPI no deberá dictar sentencia sumaria cuando: **(1)** existen hechos materiales controvertidos; **(2)** hay alegaciones afirmativas en la demanda que no han sido refutadas; **(3)** surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material; y **(4)** como cuestión de derecho no procede.[25]

**B.**

La marcha ordenada y efectiva de los procedimientos judiciales exige que las disposiciones reglamentarias para la presentación de los distintos recursos ante este Foro se observen rigurosamente.[26] En el derecho procesal apelativo *"[l]os abogados vienen obligados a cumplir fielmente el trámite prescrito en las leyes y reglamentos aplicables para el perfeccionamiento de los recursos y no puede quedar al arbitrio de estos decidir qué disposiciones reglamentarias deben acatarse y cuándo".*[27]

Con el fin de que este foro tenga ante sí todos los elementos necesarios para realizar una adjudicación responsable, la Regla 16 (C) y (E) del Reglamento del Tribunal de Apelaciones exige que el escrito apelativo contenga un cuerpo y **apéndice** que incluya:

> *(C) Cuerpo*
> *(1) […]*
> *(d) Una relación fiel y concisa de los hechos procesales y de los hechos importantes y pertinentes del caso.*
> *(e) Un señalamiento breve y conciso de los errores que a juicio de la parte apelante cometió el Tribunal de Primera Instancia.*
> *(f) Una discusión de los errores señalados, incluyendo las disposiciones de ley y la jurisprudencia aplicables.*
> *(g) La súplica.*
> *…*

---

[23] *Íd.*
[24] *Rodríguez García v. UCA, supra.*
[25] *Vera v. Dr. Bravo,* 161 DPR 308, 333 – 334 (2004).
[26] *Soto Pino v. Uno Radio Group,* 189 DPR 84, 90 (2013); *M-Care Compounding et al. v. Depto. Salud,* 186 DPR 159, 176 (2012).
[27] *Hernández Maldonado v. Taco Maker,* 181 DPR 281, 290 (2011).

*(E) Apéndice*

*[…]*

*(d) toda resolución u orden, y toda moción o escrito de cualesquiera de las partes que forme parte del expediente original en el Tribunal de Primera Instancia, en las cuales se discuta expresamente cualquier asunto planteado en el escrito de apelación; o que sean relevantes a éste;*

*(e) cualquier otro documento que forme parte del expediente original en el Tribunal de Primera Instancia y que pueda serle útil al Tribunal de Apelaciones para resolver la controversia.*[28]

**-III-**

Como Foro Apelativo, estamos en la misma posición que el TPI para atender una solicitud de sentencia sumaria. De entrada, no podemos hacer un análisis de los documentos sometidos para determinar si las partes cumplieron respectivamente con todos los trámites procesales correspondientes a la solicitud de sentencia sumaria y su oposición. Ello se debe a que el señor Rodríguez Wilson no proveyó un Apéndice completo, conforme lo exige la Regla 16 (E) de nuestro Reglamento, *supra.* Entre otros, no contamos con la moción de sentencia sumaria presentada por Luna ni la oposición presentada por el Apelante. Ante esto, incorporamos las determinaciones de hechos materiales incontrovertidas que obran en la Sentencia Sumaria recurrida.

Ahora, pasemos a atender el planteamiento de error señalado. En síntesis, el señor Rodríguez Wilson plantea que el TPI erró al emitir la Sentencia Sumaria apelada faltando una parte indispensable.

Surge del expediente que las reclamaciones de Luna en contra del señor Rodríguez Wilson se concentran en que ésta incumplió con las obligaciones voluntariamente asumidas al suscribir el pagaré hipotecario y la hipoteca que lo garantiza. En este caso, el Apelante no ha presentado ninguna evidencia que demuestre que ha

---

[28] Regla 16 (C) y (E) del Reglamento del Tribunal de Apelaciones. 4 LPRA Ap. XXII-B, R. 16.

satisfecho su deuda o que la misma se haya extinguido. Las sumas adeudadas a Luna están vencidas, son líquidas y exigibles.

Ciertamente, no existen hechos materiales que deben ser dilucidados en un juicio en su fondo, por lo que no hay impedimento para disponer del caso por la vía sumaria a favor de Luna. Con relación al planteamiento de parte indispensable, valga recordar que se trataba de un acreedor en segundo rango con relación a la acreencia de Luna. Nada de lo acordado entre el señor Rodríguez Wilson y Luna afecta el segundo rango de acreencia de ese acreedor. Además, ese asunto fue considerado y denegado por el TPI, y el Apelante nunca acudió en revisión, por lo que dicha determinación advino final, firme.

En ausencia de pasión, prejuicio, parcialidad o error manifiesto, es forzoso concluir que no erró el TPI.

**-IV-**

Por los fundamentos antes expuestos, resolvemos **confirmar** la *Sentencia* apelada.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones